**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| INDUSTRIAL OPPORTUNITY PARTNERS, L.P., | ) ) ) | |
| Plaintiff, | ) ) | Case No. 13-cv-6622 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| KENDRION FAS CONTROLS HOLDING GmbH, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Industrial Opportunity Partners, L.P. ("Plaintiff" or "IOP") brings a claim for indemnification against Defendant Kendrion FAS Controls Holding GmbH ("Defendant" or "Kendrion") for allegedly breaching two covenants in a stock purchase agreement relating to an earnout payment (Count One). Count Two seeks a declaratory judgment stating that the indemnification claim may be resolved by this Court. The Court previously stayed the litigation while Deloitte, an accounting firm retained by the parties, determined whether Plaintiff was entitled to the contested earnout payment. Defendant now moves for summary judgment [35] and argues that Deloitte's determination prohibits Plaintiff from litigating its indemnification claim under the doctrines of claim preclusion and issue preclusion. Plaintiff opposes the motion and moves for summary judgment on Count Two, arguing that the Court should declare that the indemnification claim is properly before the Court [50]. For the reasons stated below, the Court concludes that issue preclusion applies and bars Plaintiff from litigating whether Defendant complied with the covenants at issue. The Court therefore grants Defendant's motion for summary judgment [35] and denies Plaintiff's motion [50].

# I.    Background

## A.    Local Rule 56.1 Statement of Facts

The Court has taken the relevant facts from the parties' Local Rule ("L.R.") 56.1 statements.  Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue and which entitles the movant to judgment as a matter of law.  As the Seventh Circuit has stressed, facts are to be set forth in Rule 56.1 statements, and it is not the role of the Court to parse the parties' exhibits to construct the facts.  Judges are not "like pigs, hunting for truffles buried in briefs." *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991).  It simply is not the court's job to sift through the record to find evidence to support a party's claim.  *Davis v. Carter,* 452 F.3d 686, 692 (7th Cir. 2006).  Rather, it is "[a]n advocate's job * * * to make it easy for the court to rule in [her] client's favor * * *."  *Dal Pozzo v. Basic Machinery Co., Inc.,* 463 F.3d 609, 613 (7th Cir. 2006).

It is the function of the Court to review carefully statements of material facts and to eliminate from consideration any argument, conclusions, and assertions that are unsupported by the documented evidence of record offered in support of the statement.  See, *e.g.*, *Sullivan v. Henry Smid Plumbing & Heating Co., Inc.*, 2006 WL 980740, *2, n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, 2004 WL 2203418, *16 (N.D. Ill. Sept. 29, 2004); *Rosado v. Taylor*, 324 F. Supp. 2d 917, 920, n.1 (N.D. Ind. 2004).  Merely including facts in a responsive memorandum is insufficient to put issues before the Court.  *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995).  In addition, Local Rule 56.1 requires that statements of facts contain allegations of material fact and that factual allegations be supported by admissible record evidence.  See L.R. 56.1; *Malec*, 191 F.R.D. at 583-85.  Where a party improperly denies a

statement of fact by failing to provide adequate or proper record support for the denial, the Court deems that statement of fact to be admitted.

**B.     Facts**

Plaintiff is a private equity investment firm that acquires and manages middle-market manufacturing and distribution businesses. Defendant is a German subsidiary of a Dutch corporation that develops, produces, and markets electromagnetic components for industrial and automotive applications. In December 2011, the parties entered into a stock purchase agreement ("the Agreement") pursuant to which Defendant (the buyer) purchased the stock of FAS Controls, Inc. (the "Company") from Plaintiff and its affiliates (the sellers). The purchase price of the stock was $39 million, plus or minus certain adjustments to be made after the deal's closing. One such adjustment was an earnout payment that was due if the Company achieved certain earnings in fiscal year 2012.

The earnout provision of the Agreement requires Defendant to pay Plaintiff three dollars for every one dollar that the Company's 2012 Pro Forma EBITDA exceeds $6 million, up to $6 million. See [39], Ex. 2, Stock Purchase Agreement, § 1.7(a). Pro Forma EBITDA is determined in accordance with GAAP (generally accepted accounting principles) and equals the Company's earnings before interest, taxes, depreciation, and amortization. *Id.* at § 1.7(b). Section 1.7 further requires Defendant to "act in good faith and the spirit of fair dealing such that the intent of this Section 1.7 is carried out to the fullest extent practicable." *Id.* at § 1.7(e)(i). Defendant also must "use commercially reasonable efforts to implement price increases during the Company's fiscal year 2012 in the aggregate that are not less than those contemplated by the Company's 2012 business plan." *Id.* at § 1.7(e)(iv).

The Agreement also contemplates the possibility of disputes regarding the EBITDA amount and the corresponding earnout payment. If a dispute arises, the Agreement calls for a fourteen day negotiation. See *id.* at § 1.7(d). If that negotiation fails to produce an agreement, Pro Forma EBITDA is determined "following the procedures set forth Section 1.4(b) and Section 1.4(c) as applicable." *Id.* Under these sections, the parties "submit the disputed matters, as described in the Dispute Notice, together with such arguments and supporting material as either of them choose to submit in connection therewith, in writing" to Deloitte. *Id.* at § 1.4(b). Deloitte then "determine[s], based solely on presentations by the Sellers' Representative and the Buyer, and not by independent review, only those issues in dispute specifically set forth in the Dispute Notice" and "render[s] a written report * * * (the "Adjustment Report") in which [Deloitte] * * * determine[s] what adjustments, if any, should be made * * * as to the disputed items[.]" *Id.* at § 1.4(c). Additionally, the parties agreed:

> The Adjustment Report, absent fraud, shall be final and binding upon the Buyer and the Sellers, shall be deemed a final arbitration award that is binding on each of the Buyer and the Sellers, and *no Party shall seek further recourse to courts, other tribunals or otherwise, other than to enforce the Adjustment Report.*

*Id.* (emphasis added).

As it turns out, a dispute over the earnout did arise. Defendant's accounting firm, Grant Thornton LLP, found that Pro Forma EBITDA for 2012 fell short of $6 million, such that an earnout was not due; its EBITDA calculation was $5.466 million. Plaintiff objected and issued a Dispute Notice that incorporated an alternative computation performed by the accounting firm BKD LLP. BKD proposed eight upward adjustments to Defendant's EBITDA figure. Based on the adjustments, as well as an additional adjustment added by Plaintiff, Plaintiff proposed a Pro Forma EBITDA of $6.747 million—an amount that called for an earnout of $2.241 million. The lion's share of the difference between the two EBITDA calculations was attributed to "potential

price increases"—that is, price increases that the Company planned to implement in 2012, but did not actually implement. According to Plaintiff and BKD, had the Company implemented all of the planned price increases, the Company's EBITDA would be $879,000 greater. In proposing this adjustment, the BKD Report notes that Defendant was required under the Agreement to use all commercially reasonable efforts to implement price increases as planned. The BKD Report goes on to analyze the circumstances surrounding Defendant's failure to implement all planned price increases in fiscal year 2012.

On September 16, 2013, Plaintiff filed the instant suit and brought a claim for indemnification to recover damages resulting from breaches of the good faith and commercially reasonable covenants contained in Section 1.7 of the Agreement. Under the Agreement, Defendant is required to indemnify Plaintiff for any damages that arise from a breach of any covenant that is set forth in the Agreement; indemnification claims are to be filed in a federal court in Chicago. Plaintiff alleges that Defendant breached the covenants by not implementing price increases that would have resulted in a Pro Forma EBITDA that entitled Plaintiff to a substantial earnout and claims damages of at least $2 million.

After filing suit, the parties engaged Deloitte to arbitrate the disagreement concerning the EBITDA computation and whether an earnout was due. In the meantime, the Court stayed the proceedings, recognizing that it was "highly likely that 'the arbitration might help resolve, or at least shed some light on, the issues remaining in federal court.'" [26], 11/1/13 Memo. Op. at 8 (quoting *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 972 (7th Cir. 2007)). The Court explained that if "Deloitte concludes that projected price increased are not properly considered in the EBITDA calculation, or that they may be considered but only in an amount significantly below the $879,000 proposed by IOP, the damages available to IOP in this action

may be substantially reduced." *Id.*

That is exactly what happened: Deloitte determined that the upward EBITDA adjustments proposed by IOP for unachieved price increases were not warranted and that EBITDA was only $5.583 million. Deloitte accordingly determined that Plaintiff was not entitled to an earnout. In coming to that conclusion, Deloitte reviewed the parties' respective arbitration submissions, including the BKD Report. Deloitte made specific findings as to all eight of Plaintiff's proposed adjustments. While three of Plaintiff's adjustments were deemed meritorious, Deloitte concluded that an upward adjustment for unachieved price increases—based on Defendant's failure to use commercially reasonable efforts—was not appropriate. See [39], Ex. 11, Deloitte Adjustment Report at 4-6.

The parties have disputed the implications of Deloitte's decision regarding unachieved price increases from the beginning. Even before the parties submitted their materials to Deloitte, counsel were unable to agree whether, and to what extent, Deloitte's finding would affect the indemnification claim. Defendant argues that Deloitte determined that Defendant complied with the commercially reasonable and good faith covenants contained in the Agreement when it decided that an upward adjustment to EBITDA was not warranted. In support, Defendant observes that the basis for Plaintiff's proposed adjustment was Section 1.7(e)(iv) of the Agreement—the covenant that requires Defendant to use commercially reasonable efforts to implement price increases. See [59], Def.'s Resp. to Pl.'s L.R. Stmt. ¶ 59; see also [38], Def.'s L.R. Stmt. ¶ 43. Deloitte's Adjustment Report also states that this covenant is the basis for Plaintiff's proposed adjustment. See [39], Ex. 11, Deloitte Adjustment Report at 4.

Plaintiff, on the other hand, maintains that Deloitte's determination pertains solely to the EBITDA computation, *not* to whether Defendant's failure to achieve price increases was

commercially reasonable or in bad faith. In support, Plaintiff asserts that its Dispute Notice did not argue that Defendant "breached" the covenants at issue. See [52], Pl.'s L.R. Stmt. ¶ 59. Additionally, Deloitte wrote that "the [Agreement] does not define the term 'commercially reasonable' or offer any guidance as to how [Defendant's] efforts should be measured against this standard." *Id.* at ¶ 69 (quoting Deloitte Adjustment Report at 5). In its submission to Deloitte, Plaintiff also instructed that: "Deloitte's review is limited to the matters set forth in the Dispute Notice * * * such that Deloitte must not and cannot undertake a legal analysis and determine whether [Defendant] breached certain covenants in the [Agreement] forming the basis of [this lawsuit]." *Id.* at ¶ 65 (quoting Pl.'s Sub. to Deloitte).

Defendant now moves for summary judgment on Plaintiffs' indemnification claim. Defendant argues that the claim is barred—either by issue or claim preclusion—by Deloitte's determination that unachieved price increases should not be included in EBITDA. Plaintiff opposes the motion, and argues that summary judgment should be granted in its favor on Count Two.

## II.     Summary Judgment Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson,* 477 U.S. at 252.

## III.    Discussion

Plaintiff alleges that Defendant breached two covenants in the Agreement in connection with Defendant's failure to implement all of the Company's planned price increases. The first is the covenant under Section 1.7(e)(i) to "act in good faith and in the spirit of fair dealing such that the intent of [the earnout provision] is carried out to the fullest extent practicable." The second is the covenant under Section 1.7(e)(iv) to "use commercially reasonable efforts to implement price increases during the Company's fiscal year 2012 in the aggregate that are not less than those contemplated by the Company's 2012 business plan." Defendant argues that is entitled to summary judgment under the doctrines of claim and/or issue preclusion (also known as res judicata and collateral estoppel). The Court agrees that issue preclusion applies and bars Plaintiff from asserting breaches of the covenants in its indemnification action.

Issue preclusion "foreclose[s] relitigation of a matter of fact or law that has been litigated and decided in a prior proceeding" involving the same parties. *Jones v. City of Alton, Ill.*, 757 F.2d 878, 879, n1. (7th Cir. 1985). Here, the parties agreed that the issues decided by Deloitte in its Adjustment Report would be binding on the parties, see [39], Stock Purchase

Agreement, § 1.4(c), thereby giving Deloitte's decisions preclusive effect. See *IDS Life Ins. Co. v. Royal Alliance Assocs., Inc.*, 266 F.3d 645, 651-52 (7th Cir. 2001). Issue preclusion applies even if the claim in which the issue is relitigated is different from the claim in the prior proceeding. *Jones*, 757 F.2d at 879, n.1. In other words, issue preclusion still applies when "the legal theories vary between the two actions, but the first necessarily involved the litigation and determination of a matter raised again in a subsequent case." *O'Neill v. Merrill Lynch, Pierce, Fenner & Smith*, 654 F. Supp. 347, 351 (N.D. Ill. 1987) (quoting *Davis v. Chevy Chase Financial Ltd.*, 667 F.2d 160, 172 (D.C. Cir. 1981)). Where "the *factual issues* behind the claims are identical," issue preclusion may apply even if a "plaintiff brings an action under a different legal theory than [what was] presented to [an] arbitration panel." *Id.* at 350, n.1 (emphasis added).

Defendant bears the burden of establishing that issue preclusion applies and must demonstrate with clarity and certainty what was determined by Deloitte. See *Jones*, 757 F.2d at 885. Four elements must be established: (1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action. *Adams v. City of Indianapolis*, 742 F.3d 720, 736 (7th Cir. 2014). Additionally, the party against whom issue preclusion is sought must have had an effective opportunity to litigate the issue in the prior proceeding. *Jones*, 757 F.2d at 885. Issue preclusion is an equitable doctrine and should be applied as fairness and justice require. *Id.*

The only element in dispute is whether Deloitte decided the same issue that Defendant seeks to preclude—that Plaintiff acted in a commercially reasonable manner and in good faith in

failing to implement all of the planned price increases.  The other elements are not contested, as it is clear that the parties are the same, they were represented in the Deloitte arbitration, and they actually arbitrated the circumstances surrounding the price increases.  The parties' disagreement boils down to whether Deloitte determined that Defendant complied with the covenants, as Defendant argues—or alternatively—whether Deloitte simply determined that there was no basis to adjust EBITDA from an accounting perspective, without regard to whether Defendant's conduct complied with the covenants.

Plaintiff's overarching position is that issue preclusion does not apply because Deloitte did not determine whether Defendant complied with the covenants as a legal matter.  In support, Plaintiff asserts that Deloitte did not specifically state in its Report whether Defendant "breached" the covenants.  See [65], Pl.'s Reply at 2-4.  Nor, Plaintiff argues, were the parties' experts opining on whether Defendant complied with the covenants as a legal matter in their presentations to Deloitte.  See *id.* at 4.  Plaintiff also "expressly advised Deloitte that it was not asserting a breach of Section 1.7(e)(iv) [the commercial reasonableness covenant] in the Deloitte process and noted that Deloitte could not address whether [Defendant] breached Section 1.7(e)(iv)."  *Id.* at 3.  Finally, the parties agreed that Pro Forma EBITDA was to be determined in accordance with GAAP.  *Id.* at 4.

As explained above, however, issue preclusion still applies even if a plaintiff pursues a different legal theory in court than the parties presented in the arbitration.  See, *e.g.*, *O'Neill*, 654 F. Supp. at 350, n.1.  As discussed in more detail below, the record demonstrates that Deloitte evaluated, as a factual matter, whether Defendant's failure to implement certain price increases was commercially reasonable so that it could resolve the EBITDA dispute.  Although Deloitte decided the factual issue of Defendant's conduct in the context of an EBITDA calculation in

accordance with GAAP, that decision still has preclusive effect. In other words, it is irrelevant that Deloitte did not determine (and was not asked to determine) whether Defendant "breached" the covenants, because Deloitte's factual determinations have preclusive effect even though Plaintiff's claim is different in this subsequent action.

Defendant therefore is entitled to summary judgment if it can establish with clarity and certainty that Plaintiff's breach of covenant claims are based entirely on facts that were decided by Deloitte. See *Hybert v. Shearson Lehman/American Express, Inc.*, 688 F. Supp. 320, 325 (N.D. Ill. 1988). The Court asks whether "a rational factfinder could have reached a conclusion based upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* at 326 (quoting *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 637 F. Supp. 1333, 1336 (N.D. Ill. 1986) (citing *Ashe v. Swenson*, 397 U.S. 436, 444 (1970)). "When the issue for which preclusion is sought is the only rational one the factfinder could have found, then the issue is considered "determined" by the factfinder, even if no explicit finding of that issue has been made." *Id.* For the reasons that follow, the Court concludes that Deloitte's arbitration decision determined whether Defendant was commercially reasonable and acted in good faith. Plaintiff therefore is barred from asserting breaches of the covenants. The Court addresses both covenants below.

### A.    Defendant's commercially reasonable efforts to implement price increases

The Court first addresses whether Deloitte determined the issue of commercial reasonableness. For the reasons that follow, Defendant has demonstrated that this issue was decided by Deloitte in Defendant's favor.

To begin with, the parties' submissions to Deloitte analyzed the circumstances surrounding the implementation of price increases. Both parties sought to persuade Deloitte to adopt their respective positions as to whether an EBITDA adjustment was necessary based on

Defendant's promise to use commercially reasonable efforts to implement price increases. Plaintiff gave Deloitte the BKD Report (which was incorporated into Plaintiff's Dispute Notice) that sets forth BKD's analysis of Defendant's failure to implement price increases and its conclusion that an upward adjustment to EBITDA should be made to reflect unachieved price increases. See [38], Def.'s L.R. Stmt. ¶ 39; see also [39], Ex. 4, BKD Report at 25-29. The BKD Report states that "Buyer shall use all commercial reasonable efforts to implement price increases as contemplated by the AOP FY12 [or Annual Operating Plan for fiscal 2012]," and cites Section 1.7(e)(iv) of the Agreement. [39], Ex. 4, BKD Report at 25. The Report proceeds to analyze the circumstances surrounding the implementation of price increases, concluding:

> [W]e do not have adequate basis to determine if the Buyer used all "commercially reasonable efforts" to implement price increases as contemplated by the AOP FY12 (SPA 1.7(e),(iv)). In our analysis of data and inquiry of management, we noted four patterns related to those items where the planned AOP FY12 price increase was not achieved in FY12:
>
> (i) A subsequent price increase was achieved in FY13.
>
> (ii) A consistent set of statements by management paraphrased as: [Company] management did not aggressively pursue price increases where they were concerned about destabilizing the base business acquired from IOP * * *.
>
> (iii) * * * [the Company] had a history of achieving price increases.
>
> (iv) * * * only $42 [thousand] of additional annualized planned price increases were achieved after Jan 12 (for the remainder of FY12).
>
> Based upon the above analysis, we propose an $879 [thousand] adjustment to reflect the planned price increases not realized in FY12.

*Id.* at 29. Deloitte also received Defendant's arbitration submission on this topic, in which Defendant refuted Plaintiff's suggestion that it had acted in a commercially unreasonable manner. See [38], Def.'s L.R. Stmt. ¶ 46; see also [39], Ex. 9, Def.'s Sub. to Deloitte.

Defendant's submission spends several pages explaining why it did act commercially reasonably in implementing price increases. See [39], Ex. 9, Def.'s Sub. to Deloitte at 9-13.

In addition, Deloitte considered the parties' submissions to determine whether the unachieved price increases should be included in EBITDA. Importantly, Deloitte recognized that Plaintiff proposed the upward EBITDA adjustment based on the commercial reasonableness covenant. See [39], Ex. 11, Deloitte Adjustment Report at 4. Deloitte begins by stating:

> "The Sellers propose an $879,000 upward adjustment to Pro Forma EBITDA attributable to the Buyer's failure to implement price increases scheduled in the 2012 Annual Operating Plan ("2012 AOP"). The Sellers *reference section 1.7(e)(iv) of the Agreement as the basis for their proposed adjustment*. This section states that the 'Buyer . . . shall *use commercially reasonable efforts* to implement price increases during the Company's fiscal year 2012 in the aggregate that are not less than those contemplated by the Company's 2012 Business plan.'"

*Id.* (emphasis added).

Deloitte then summarized Defendant's reasons for not achieving all of the price increases. Deloitte observed, for example, "[Kendrion] also provided support, such as evidence of economic distress faced in 2012 by customers and emails detailing the negotiation of prices, for why scheduled price increases could not be obtained from certain customers[.]" *Id.* at 5. Deloitte also identified as an important factor in its consideration the fact that "the Agreement requires that the Buyer 'use commercially reasonable' efforts to implement the scheduled price increases, but that the Agreement did not define the term. *Id.* at 5. Notably, Deloitte cited Defendant's arbitration submission in its Report, including pages from Defendant's subsection entitled, "Kendrion Manages [the Company] In A Commercially Reasonable Manner." See *id.* at 4-5 (citing page 11 of Defendant's Arbitration Submission). Deloitte ultimately concluded that an upward adjustment to EBITDA was not warranted, explaining:

> [Kendrion] has demonstrated that effectively 63% of the budgeted 2012 price increase were achieved by [the Company] and provided us with evidence for why

the remaining scheduled price increases in the 2012 [plan] were not achieved by the Company in fiscal year 2012. Therefore, Deloitte [ ] agrees with [Kendrion's] position and has determined that an upward adjustment of $879,000 should not be made to the Pro Forma EBITDA figure."

*Id.* at 6.

Based on these documents—Deloitte's Adjustment Report and the parties' arbitration submissions—the Court concludes that Defendant has met its burden of demonstrating that the parties raised and Deloitte decided the factual issue of whether Defendant acted commercially reasonably in implementing price increases. Deloitte explicitly stated that the basis for the proposed adjustment, as identified by Plaintiff, was Defendant's obligation to act commercially reasonably. Deloitte then cited and quoted from Defendant's submission that made a case for why its implementation of price increases was, in fact, commercially reasonable. Finally, Deloitte stated that it agreed with Defendant's position and rejected Plaintiff's proposed EBITDA adjustment. In sum, the only rational explanation for Deloitte's rejection of Plaintiff's proposed EBITDA adjustment was that, in Deloitte's view, Defendant did not act unreasonably when it failed to implement all of the planned price increases.

The Court therefore will grant summary judgment to Defendant on Count One because Plaintiff's indemnification claim is based on the commercial reasonableness issue already decided by Deloitte. Specifically, the complaint alleges that Defendant breached its obligation to make commercially reasonable efforts to implement price increases in connection with the anticipated earnout. The complaint details the 2012 planned-for price increases and the Company's achievement of only 34% of them, despite its history of successfully implementing all planned price increases. See Compl. at ¶¶ 23-31. The complaint also details BKD's review of the unachieved price increases, including BKD's interviews with Company management. See *id.* at ¶¶ 36-41. Plaintiff also attached the BKD Report as an exhibit to its complaint. Of course,

this is the same report that Plaintiff submitted to Deloitte. Summary judgment therefore is granted to Defendant on Count One, to the extent that it asserts a breach of the commercial reasonableness covenant.

## B. Defendant's adherence to the good faith covenant

Plaintiff's indemnification claim also is based on Defendant's breach of the good faith covenant contained in Section 1.7(e)(i)—the covenant that requires Defendant to "act in good faith and the spirit of fair dealing such that the intent of [ ] Section 1.7 is carried out to the fullest extent possible," [39], Ex. 2, Stock Purchase Agreement. Defendant maintains that Deloitte's commercial reasonableness determination also decided the issue of good faith, even though the Adjustment Report does not discuss good faith. Defendant reasons that it would be impossible for Defendant to act commercially reasonably, but also in bad faith, as good faith imposes a lower standard of conduct than commercial reasonableness. See [58], Def.'s Reply at 7. Plaintiff disagrees and argues that the covenants are governed by different standards. Whereas commercial reasonableness is an objective standard, Plaintiff argues, an express covenant requiring good faith is subjective. See [51], Pl.'s Memo. at 14-15.

The parties' agreement does not define "good faith."[1] Plaintiff points to *DV Realty Advisors LLC v. Policemen's Annuity and Benefit Fund of Chicago*, 75 A.3d 101 (Del. 2013), in support of its argument that the express covenant of good faith imposes a standard of conduct that is different from commercial reasonableness. There, in the context of a limited partnership agreement that imposed an express (but undefined) duty to act in good faith when deciding to remove a general partner, the Delaware Supreme Court explained that an express duty of good faith must be analyzed "in the context of the larger provision—or value—it sought to protect."

---

[1] The Agreement specifies that it is to be interpreted in accordance with Delaware law. [39], Ex. 2, Stock Purchase Agreement, § 11.10.

See *id.* at 110. In interpreting the express duty of good faith in the agreement, the Court explained that good faith is often defined "by its opposite characteristic—bad faith," and applied "a traditional common law definition of the business judgment rule." See *id.* The Court held that the decision to remove the plaintiff from the partnership would be considered to be in good faith, "unless the Limited Partners went 'so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith.'" *Id.* (quoting *Brinckerhoff v. Enbridge Energy Co., Inc.*, 67 A.3d 369, 373 (Del. 2013)). The Court emphasized that the good faith standard called for in the agreement was "purely subjective." *Id.* at 111.

The parties have not offered a definition of good faith in the context of a contractual earnout provision. The Court's research located one Delaware case, *LaPoint v. AmeriSourceBergen Corporation*, 2007 WL 2565709, *10 (Del. Ch. Sep. 4, 2007), in which a court analyzed a contractual covenant—similar to the one at issue here—that required the defendant to "act in good faith during the Earnout Period" and to "not undertake any actions during the Earnout Period any purpose of which is to impede the ability of the Stockholders to earn the Earnout Payments." After a bench trial, the Delaware Court found that the plaintiff had not demonstrated a breach of good faith because it failed to demonstrate that the defendant "stifled otherwise profitable" actions simply in order to avoid earnout payments. *Id.* at 10. *LaPoint* and *DV Realty Advisors* provide guidance in interpreting the good faith covenant at issue here to determine whether Deloitte's commercial reasonableness finding also encompasses good faith.

Here, the contract imposed on Defendant an obligation to act in good faith in the context of ensuring that "the intent of [the earnout provision] is carried out to the fullest extent practicable." See [39], Ex. 2, Stock Purchase Agreement, § 1.7(e)(i). The complaint alleges that

the parties incorporated the good faith covenant to "protect Plaintiff from [Defendant] manipulating the Pro Forma EBITDA in order to reduce the amount of the earnout payment[.]" Compl. at ¶ 3. Like the alleged breach of the commercial reasonableness covenant, Plaintiff's contention that Defendant did not act in good faith is premised on Defendant's failure to implement all of the anticipated price increases. Accordingly, Plaintiff must establish that Defendant purposely avoided implementing otherwise profitable or feasible price increases to avoid an earnout payment. See *LaPoint*, 2007 WL 2565709, at *10. Defendant's failure to achieve all of the price increases must be "so beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than" Defendant's bad faith or its desire to avoid paying the earnout. See *DV Realty Advisors LLC*, 75 A.3d at 110.

In light of this standard, Deloitte's factual determination that Defendant's pricing decisions were reasonable forecloses any argument that Defendant acted in bad faith. As summarized in Deloitte's Adjustment Report, Defendant put forth several reasons to justify its business decisions regarding price increases, which Deloitte found to be legitimate. Now bound by this finding, Plaintiff may not argue that Defendant's actions were nonetheless "so beyond the bounds of reasonable judgment that [they] seem[ ] essentially inexplicable on any ground other than" Defendant seeking to avoid paying the earnout. See *id.* at 110. Accordingly, summary judgment is granted to Defendant on the second part of Plaintiff's indemnification claim that asserts a breach of the good faith covenant contained in Section 1.7(e)(i) of the Agreement.

### C.     None of Plaintiff's proposed exceptions to preclusion apply.

Finally, Plaintiff argues that certain exceptions set forth in Section 26 of the Restatement (Second) of Judgments apply and bar the application of issue and claim preclusion. First, Plaintiff contends that the parties agreed to "split" the claim at issue and to involve both Deloitte

and the Court, because Section 7 of the Agreement requires indemnification claims for covenant breaches to be litigated in a district court, whereas Sections 1.4 and 1.7 require Deloitte to determine EBITDA when a dispute arises. See [51], Pl.'s Memo. at 9-10. Plaintiff also argues that issue preclusion should not apply because Plaintiff was "unable to assert an indemnification claim asserting covenant breaches before Deloitte to obtain any resulting Damages," as Deloitte was merely "addressing the calculation of Pro Form EBITDA." *Id.* at 12-13.

As Defendant points out, however, the Restatement provisions found in § 26 apply only as exceptions to claim preclusion. See Restatement (Second) of Judgments, § 26 (stating that the section provides exceptions to "the general rule of § 24," which concerns claim preclusion). The Restatement has provisions that specifically deal with issue preclusion, which are set forth in a different title of the Restatement. See *id.* at §§ 27-28. The introductory note of the title that includes the Section 26 exceptions also differentiates between claim preclusion and issue preclusion, noting that even when claim preclusion does not apply, "issues litigated and determined between the parties in the first action are conclusive upon them in the second action under the rules as to collateral estoppel [or issue preclusion]." See *id.* at 3, 2, D Intro. Note; see also *Burgos v. Hopkins*, 14 F.3d 787, 791-93 (2d. Cir. 1994) (applying § 26(1)(c) of Restatement (Second) of Judgments as an exception to the application of claim preclusion, but explaining that nonetheless, issue preclusion may apply).

Even if these Restatement provisions were in play, they do not provide a convincing reason to eschew the application of issue preclusion. Plaintiff's primary argument that the Agreement allows the parties to "split resolution of claims" misses the mark. See Pl.'s Memo. at 9 (citing Restatement (Second) of Judgment, § 26(1)(a)).[2] Regardless of whether the parties

---

[2] Generally, a plaintiff is barred from splitting claims—meaning suing for part of a claim in one action and then suing for the remainder in another, see *Merrifield v. Beaven/Inter-American Cos., Inc.*, 1992 WL

agreed to litigate covenant breaches in federal court, it is undisputed that the decisions set forth in Deloitte's Adjustment Report are binding; Plaintiff admits that it may not challenge "in this Court Deloitte's determination that there is no basis for adjusting Pro Forma EBITDA as determined in accordance with GAAP," *id.* at 12. Plaintiff tries to draw a distinction between how Deloitte was to determine EBITDA (in accordance with GAAP) versus how Plaintiff would prove it was entitled to an earnout in court (by proving covenant breaches). Nonetheless, the identical *factual issue* of Defendant's commercial reasonableness is involved, making issue preclusion appropriate. As discussed, Deloitte decided that issue in its Adjustment Report, and it may not be relitigated here.

Moreover, even if Plaintiff was *supposed* to limit its arbitration submission—and only raise covenant issues in federal court through an indemnification action—Plaintiff *chose* to put Defendant's commercial reasonableness before Deloitte. Plaintiff cannot now argue that issue preclusion does not apply because commercial reasonableness is to be resolved exclusively by the Court, and not by Deloitte. See *Kiernan v. Piper Jaffray Cos., Inc.*, 137 F.3d 588, 594 (8th Cir. 1998) (rejecting argument that arbitration award should be vacated because ADA claim was not arbitrable, because plaintiffs' "[arbitration] statement of claim specifically included allegations of unlawful employment practices under the ADA, and this submission defines the authority of the arbitration panel without regard to whether the parties had a prior legal obligation to submit the dispute.") (internal quotations omitted); *Fortune, Alsweet and Eldridge, Inc. v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983) ("[A] party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result.").

---

193553, at *3 (N.D. Ill. Aug. 3, 1992), or deciding to adjudicate multiple claims that arise out of the same transaction in multiple, independent suits, instead of bringing all claims in a single proceeding, see *Arrow Gear Co. v. Downers Grove Sanitary Dist.*, 629 F.3d 633, 638 (7th Cir. 2010).

Plaintiff also argues that preclusion does not apply under the exceptions found in Sections 26(1)(c) and (1)(f) of the Restatement,[3] because Plaintiff was "unable to assert an indemnification claim asserting covenant breaches before Deloitte to obtain any resulting Damages." [51], Pl.'s Memo. at 12-13. Although Plaintiff is correct that an indemnification *claim* could not be asserted before Deloitte, issue preclusion still applies to Deloitte's factual determination of commercial reasonableness. See, e.g., *O'Neill*, 654 F. Supp. at 350, n.1.

In summary, Deloitte determined that Defendant used commercially reasonable efforts to implement price increases. Because Plaintiff's indemnification claim is based on this already decided factual issue, summary judgment is granted to Defendant on Count One. With respect to Count Two, Plaintiff asks that the Court enter declaratory judgment stating that Plaintiff's indemnification claim is to be resolved by the Court. Because the Court has determined that the indemnification claim is barred by issue preclusion, Plaintiff's motion for summary judgment on Count Two is denied, and Count Two is stricken as moot.

## IV.    Conclusion

For the foregoing reasons, the Court grants Defendant's motion for summary judgment [35] and denies Plaintiff's motion for partial summary judgment [50]. This case is set for status hearing on January 28, 2015 at 9:00 a.m. to discuss whether the entry of a final judgment is appropriate at this time.

---

[3] Although Plaintiff cites Section 26(1)(d) of the Restatement, Plaintiff appears to rely on subsection (1)(c), as Plaintiff quotes from (1)(c) in its brief. See [51], Pl.'s Memo. at 12. Subsection (1)(c) applies where a "plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts * * * and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief[.]" Restatement (Second) of Judgments, § 26(1)(c). Subsection (1)(f) applies where "[i]t is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason, such as * * * the failure of the prior litigation to yield a coherent disposition of the controversy." *Id.*

Dated:  January 14, 2015

Robert M. Dow, Jr.
United States District Judge